UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMAINE MCADORY,

    Plaintiff,

  v.              Case No. 22-cv-0598-bhl

ALEXIS LIMON, et al.,

    Defendants.

## DECISION AND ORDER

  Plaintiff Jermaine McAdory, a prisoner at the Kettle Moraine Correctional Institution who is representing himself, is proceeding, in part, on a claim based on allegations that while he was incarcerated at the Milwaukee County Jail, Defendants Randall Wilborn and Alfonso Greer refused to provide him with cleaning and hygiene supplies even though he and his cell were covered in human waste. *See* Dkt. No. 10 at 3-4. On December 12, 2022, Defendants filed a motion for summary judgment on the ground that McAdory failed to exhaust the administrative remedies as to his claims against Wilborn and Greer.[1] Dkt. No. 25. McAdory responded to the motion, but his response focuses on the merits of his claims; it does not address Defendants' exhaustion arguments, nor does it dispute Defendants' proposed statements of fact.[2] *See* Dkt. Nos. 34, 35. Accordingly, Defendants' proposed facts are deemed admitted for the purposes of deciding Defendants' motion. *See* Civil L. R. 56(b)(4). Nevertheless, for the reasons explained in this decision, the Court will deny Defendants' motion.

---

[1] Defendants concede that McAdory exhausted the administrative remedies as to his claim against Defendant Alexis Limon.

[2] McAdory states only that "he went through the full grievances process that the kiosks allowed him to file" and that he provided proof that he exhausted in "his first summary judgment that got lost in the mail," but the Court never received McAdory's "first summary judgment" or the referenced proof. Dkt. No. 34 at 13.

## BACKGROUND

The events at issue occurred in March 2022. At that time, McAdory was incarcerated at the Milwaukee County Jail where Wilborn and Greer worked as corrections officers. Dkt. No. 28 at ¶¶1-3. The jail's grievance policy is set forth in the jail handbook as follows:

> Grievance procedure:
>
> 1. Complete grievance in the Kiosk. If you need help, ask the officer, or request the assistance of an advocate.
>
> 2. The grievance will be reviewed and answered by a Jail Representative.
>
> 3. If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. The appealing Jail Representative will review and rule on your appeal.
>
> 4. Once the appealing representative has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new-found information/evidence. This decision/action is final.

Dkt. No. 27-2 at 3.

On March 21, 2022, McAdory submitted grievance number 65153 (Grievance #1), in which he stated that he "was denied cleaning supplies, tissue and [he] was forced to sleep in f[eces] and urine." He notes that, among others, Wilborn and Greer were involved. Dkt. No. 27-4 at 2. About a week later, on March 28, 2022, a jail representative responded, "Your cell was cleaned between the time the last inmate left and you arrived. You came out for rec the following morning. Was anybody made aware of the bio material?" *Id.* at 2-3. The grievance was then closed. McAdory appealed on April 20, 2022, stating, "I've sat in that nasty cell for three weeks without any cleaning supplies. This is not something I'm making up." *Id.* at 3. Two weeks later, on May 5, 2022, long after McAdory had been moved to a different cell, a jail representative stated, "If you are not satisfied with the cleaning the bio did you can [sic] ask the pod officers for cleaning supplies to do it yourself." *Id.* The appeal was then closed.

2

While Grievance #1 was pending, McAdory submitted grievance number 66411 (Grievance #2) on March 30, 2022, in which he noted that he had been placed in a cell "with this mess still on me for a day 1/2 which caused me to break out with rashes that [he is] now getting medical treatment for." Dkt. No. 27-4 at 5. He received a response on April 9, 2022, stating, "You were placed into a clean cell, in 4D, and provided hygiene products (towel, soap, etc.) after being removed from 3A. You were also medically assessed and cleared twice that night." *Id.* McAdory appealed a few days later on April 12, 2022, stating, "I was not placed in a clean cell nor given medical attention or hy[giene] product." *Id.* On April 14, 2022, a jail representative noted that Captain Evans had confirmed the cell was cleaned before McAdory was placed in it. On April 18, 2022, McAdory appealed again, stating, "I was placed in a cell that had excrement on the wall and toilet." *Id.* at 6. On May 5, 2022, Captain William Duckert responded, "According to Captain Evans, your needs were met." *Id.* The second appeal was then closed.

Finally, on March 31, 2022, a day after McAdory submitted Grievance #2 and while Grievance #1 was still pending, McAdory submitted two more grievances about this incident. First, in grievance number 66563 (Grievance #3), he stated, "This is a continuation from my first complaint regarding officer[s] . . . who refused to allow me to clean my cell and denied me of toilet paper plus would not call the plumber to fix my toilet that was broken before I got there." Dkt. No. 27-4 at 6. On April 16, 2022, someone responded, "Please advise cell cleaning must be completed in housing units daily. You are currently in a general population housing unit, you have been assigned to that pod since 03/19/22. You have to receive your cleaning supplies from you[r] pod Officer or Pod Occupant workers." *Id.* Also on March 31, 2022, McAdory filed grievance number 66566 (Grievance #4), stating, "I had to use bandages for toilet paper, hand soap to clean my cell with and my lunch tray as a toilet, during bowel movement. I'm asking that you investigate

3

their unethical behavior soon." *Id.* at 7. On April 16, 2022, the same day he received a response to Grievance #3, someone responded, "This was already answered." *Id.* at 7.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Wilborn and Greer assert that they are entitled to summary judgment because McAdory did not exhaust the administrative remedies as to his claim against them before he filed this lawsuit. The PLRA provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to adhere to the specific procedures and deadlines established by

4

the institution's policy. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citation omitted). That said, inmates are expected to exhaust only those administrative remedies that are available to them. Because exhaustion is an affirmative defense, Defendants must prove that the administrative remedies were available. *Dole*, 438 F.3d at 809. An administrative remedy may be unavailable when prison officials provide an inmate with erroneous information, use affirmative misconduct to prevent the inmate from exhausting, or fail to respond to an inmate's grievance. *Id.*; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Defendants assert that, while McAdory filed grievances regarding his allegations against Wilborn and Greer, he did not fully appeal those grievances as required by the jail's grievance policy. Defendants argue that this action must therefore be dismissed because McAdory did not complete every step in the grievance process. The Court will deny Defendants' motion because the record demonstrates that the administrative remedies were unavailable to McAdory as to his claims against Wilborn and Greer.

The first step of the jail's grievance policy instructs inmates to "[c]omplete a written grievance in the Kiosk." Defendants concede that McAdory submitted multiple grievances through the kiosk complaining that he was placed in a dirty cell and refused cleaning and hygiene products. The second step of the grievance policy informs inmates that their grievances will be reviewed and answered by a Jail Representative. Defendants assert that a jail representative responded to each of McAdory's grievances. The third step of the grievance policy instructs inmates that, if they are dissatisfied with the result, they may appeal the decision in writing. The third step also states, "[t]he appealing Jail Representative will review *and rule on your appeal*." Dkt. No. 27-2 at 3 (emphasis added).

5

The administrative remedies were unavailable to McAdory because no jail representative *ruled* on his appeal of his first grievance. After being informed in response to his grievance that his cell had been cleaned before he was placed in it, McAdory appealed, stating that he had been made to sit in "that nasty cell for three weeks without any cleaning supplies." Rather than addressing the substance of McAdory's appeal, the jail representative sidestepped the issues and informed McAdory that, if he is unhappy with the state of his cell, he could ask for cleaning supplies to do it himself. But this response is nonsensical because McAdory was no longer living in the "nasty cell" about which he was complaining and, more importantly, the point of his grievance had been that officers were denying his requests for cleaning supplies. Even broadly construed, the jail representative's response cannot be characterized as a *ruling* on McAdory's appeal because the response is irrelevant to the issues he raised in his grievance and appeal. Given that the grievance procedures are silent on what an inmate must do if they do not receive a ruling on their appeal, McAdory was not required to do anything else. *See King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (overruled on other grounds) (explaining that it has long been settled that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about").

McAdory was required to exhaust the *available* administrative remedies, and no remedy was available to McAdory because jail officials failed to rule on the appeal of his first grievance. "[P]risoners need not file multiple, successive grievances raising the same issue." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Nonetheless, in an effort to resolve his complaints, McAdory filed additional grievances raising the same concerns. The record reveals that the jail representatives' responses to his subsequent grievances were as inadequate as the response to his first grievance. For example, McAdory noted that his third grievance was a continuation of his

6

first grievance. As with the response to McAdory's appeal on his first grievance, the jail representative sidestepped the issues McAdory raised in his third grievance, informing him that cleaning is completed daily on the housing units and confirming that he had been assigned to general population since March 19, 2022. That information in no way addresses McAdory's concerns that he had been denied cleaning and hygiene supplies while he was in segregation for three weeks.

Similarly, in response to McAdory's fourth grievance about having to use bandages for toilet paper and hand soap to clean his cell, the jail official simply responded, "[t]his was already answered." The jail official does not state *when* or *how* the issues raised in this grievance was answered. As discussed, no substantive answer was given in response to McAdory's first or third grievances. The *only* direct response and ruling McAdory received on these issues was in response to his second grievance, in which he complained that he had been placed in a cell even though he was covered in human waste. Defendants assert that McAdory's second grievance does not exhaust his claim against Wilborn and Greer because it is silent about being denied cleaning and hygiene items. But in response to McAdory's second grievance, a jail official stated that he had been placed in a clean cell and given hygiene products. When McAdory appealed, a jail official confirmed that his cell had been cleaned before he was placed in it. And when McAdory appealed a second time, stating that there was excrement on the walls and toilet, a jail official responded that it had been decided that his needs had been met.

In essence, Defendants argue that McAdory raised the issues giving rise to his claim against Wilborn and Greer only in his first, third, and fourth grievances, and even though no jail representative ever directly ruled on those issues in response to those grievances, McAdory failed to exhaust because he did not appeal the non-rulings. They further argue that, even though a jail

7

representative directly addressed and ruled on those issues in response to McAdory's second grievance and even though McAdory completed the appeal process on that grievance, that grievance does not exhaust his claim against Wilborn and Greer because the grievance itself does not raise the issues giving rise to his claim against Wilborn and Greer. The Court rejects Defendants' argument. "The Prison Litigation Reform Act was not meant to impose the rule of 'heads we win, tails you lose' on prisoner suits." *King v. McCarty*, 781 F.3d at 896. Jail officials cannot disregard their own procedures and at the same time insist that prisoners strictly comply with the procedures. Given the confusion jail officials created with how they responded (and failed to respond) to McAdory's grievances, the Court concludes that the administrative remedies were unavailable to him. Defendants' summary judgment motion must therefore be denied.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment on exhaustion grounds as to McAdory's claim against Wilborn and Greer (Dkt. No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties must respond to any outstanding discovery requests within thirty days of entry of this decision.

**IT IS FURTHER ORDERED** that the parties must serve their discovery requests by a date sufficiently early so that discovery is completed no later than **April 28, 2023,** (consistent with Fed. R. Civ. P. 33 and 34, the parties must serve their requests at least **thirty days** *before* the deadline to allow the opposing party sufficient time under the rules to respond by the deadline).

**IT IS FURTHER ORDERED** that the parties may file motions for summary judgment on the merits, together with supporting materials, no later than **May 30, 2023**.

Dated at Milwaukee, Wisconsin on March 2, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge